UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

ANTHONY CAMMARATA,

                          Plaintiff,

           v.

THE CITY UNIVERSITY OF NEW YORK, SONIA
PEARSON, LIDIA SANCHEZ, ROBERT AJAYE,
JEFF RICKMAN, and LIN ABREU,

                          Defendants.

-------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
17-CV-6456 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Anthony Cammarata, proceeding *pro se*, commenced the above-captioned action against the City University of New York ("CUNY"), Sonia Pearson, Lidia Sanchez, Jeff Rickman, and Lin Abreu, individual employees of CUNY ("individual CUNY Defendants"), and Robert Ajaye, DC 37 Union President, asserting claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Consolidated Omnibus Budget Reconciliation Act., 29 U.S.C. § 1161 *et seq.* ("COBRA"), the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), and the New York State Freedom of Information Law, N.Y. Pub. Off. Law §§ 84–90 ("FOIL"). (Compl., Docket Entry No. 1.)[1] Plaintiff seeks "actual damages for loss of wages[,] . . . [two] years full

---

[1] Plaintiff's Complaint includes a form complaint for employment discrimination and a separate typed complaint. Although the allegations in the typed document are organized in numbered paragraphs, the allegations in the form complaint are not organized in numbered paragraphs. The Court considers both documents and refers to them collectively as the Complaint, and refers to the page numbers assigned by the Electronic Case Filing ("ECF") system.

salary[,] . . . full medical insurance and . . . medical benefits when retirement age is reached[,] . . . full retirement eligibility and continued contribution into pension[,] . . . [r]emoval of any/all disciplinary letters in Plaintiff's [p]ersonnel [f]ile[,] . . . [and] full protection against any retaliatory remarks, counter lawsuits or accusations written or verbal, present or in the future from all Defendants." (Compl. 7.) Plaintiff also seeks reinstatement of his employment. (*Id*. at 29.) The Court grants Plaintiff's request to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915 for the purpose of this Memorandum and Order. Having reviewed the Complaint *sua sponte* pursuant to 28 U.S.C. § 1915, for the reasons set forth below, the Court dismisses the Complaint.

## I. Background

### a. Factual background

The Court assumes the truth of Plaintiff's allegations in the Complaint for purposes of this Memorandum and Order.[2] Plaintiff was employed by CUNY from July 28, 2008 until he was "removed from payroll" on January 19, 2017. (Compl. 12.)

#### i. FMLA leave

On or about September 6, 2016, Plaintiff "was not feeling well" and experienced "severe headaches, body aches and insomnia." (*Id*.) Plaintiff informed "his supervisors, Dean, Carlos Flynn and Duffie Cohen" of his medical condition. (*Id*.) Approximately six days later, CUNY's

---

[2] The Court also considers documents attached to Plaintiff's Complaint. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (citations omitted)); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

2

Human Resources ("HR") department contacted Plaintiff requesting that his doctor complete FMLA forms. (*Id.*) Dr. Gennadiy Kvetny, Plaintiff's doctor, completed the FMLA forms, indicating that Plaintiff was suffering from anxiety and depression, and recommended continuous bed rest. (*Id*. at 4.) After the FMLA forms were emailed to HR, Plaintiff called HR and left a message for Francis Correa "regarding filing for disability, to which [Plaintiff] never received a response." (*Id*.)

On or about September 26, 2016, Plaintiff spoke with Lidia Sanchez, an HR coordinator, and confirmed that HR received his FMLA forms. (*Id*.) During the call, Plaintiff inquired about long-term disability. (*Id*.) Sanchez informed Plaintiff that in order to receive long-term disability, "he would have to be out for [six] consecutive months and have his [d]octor fill out the forms at that time." (*Id.* at 4–5.) Plaintiff remained on FMLA leave for ninety days and made "several visits to Dr. Kvetny," through November 18, 2016. (*Id.* at 14.)

On November 18, 2016, Plaintiff contacted HR via an email addressed to Sanchez. (*Id*.; Email dated Nov. 18, 2016, annexed to Compl. as Ex. C, Docket Entry No. 1.) According to Plaintiff's email, his doctor requested that Plaintiff be placed on disability. (Email dated Nov. 18, 2016.) In the same email, Plaintiff inquired as to the process to file for disability. (*Id*.) Plaintiff never received a response. (Compl. 14.) Seven days later, Plaintiff sent "a follow-up email" again inquiring about the process to obtain disability benefits. (Email dated Nov. 25, 2016, annexed to Compl. as Ex. D, Docket Entry No. 1.) Plaintiff did not receive a response to the second email. (Compl. 14.)

Plaintiff subsequently consulted with an attorney as to his ability to receive disability benefits. The attorney "informed . . . Plaintiff that CUNY was denying him the right to file for [d]isability, [s]hort-[t]erm and/or possible long-term," and "suggested that [P]laintiff call [HR]"

3

to get a better explanation for the denial of his benefits. (*Id.* at 14–15.)

On or about November 28, 2016, "after having exhausted the FMLA," Plaintiff called HR and spoke to Ming Ho Chan, an HR representative. (*Id*. at 15.) Chan informed Plaintiff that he was entitled to short-term disability only through his union. (*Id*.) Plaintiff told Chan that "he was never informed of this" and was "basically misled by Ms. Sanchez several months prior." (*Id*.) Chan did not comment on Plaintiff's allegation and instead told Plaintiff that he would have to ask his supervisors what forms Plaintiff needed to complete in order to file for short-term disability. (*Id*.) Chan then forwarded Plaintiff "an old form from the DC-37 Union." (*Id*. at 16.) Upon receiving the form, Plaintiff called his Union and a representative told him that "he may no longer qualify" for disability benefits and suggested that Plaintiff file an appeal. (*Id*.) Plaintiff "became very distraught and did not know what to do." (*Id*.) He called his union representative, Robert Ajaye, who asked Plaintiff why he waited so long to request disability benefits. (*Id*.) Plaintiff responded that Sanchez provided him with misleading information and "that he would file a complaint." (*Id*.)

Plaintiff subsequently called Sanchez and asked why she never mentioned Plaintiff's eligibility for short-term disability. (*Id*. at 16–17.) According to Plaintiff, Sanchez did not respond to his question and instead informed Plaintiff that short-term disability was no longer an option, that short-term disability "would not have paid as much as FMLA," and that "Plaintiff was more or less better staying on FMLA." (*Id*. at 17.) Sanchez also recommend that Plaintiff have his doctor "extend the FMLA," and Plaintiff agreed. (*Id*.)

In an email dated November 30, 2016, Sanchez informed Plaintiff that he was not eligible for long-term disability and that he would need to "submit substantial medical documentation in order to extend current leave." (*Id.*) On or about December 2, 2016, Plaintiff's doctor

completed FMLA forms extending his leave through February 2, 2017. (*Id.* at 17–18.) After submitting the forms to HR, Plaintiff received a letter from Sonia Pearson, dated December 12, 2016, stating that the forms were "incomplete and insufficient." (*Id.* at 18.) The letter further stated that Plaintiff was required to "see his [d]octor again" and have his doctor "explain in more detail" why Plaintiff should remain on FMLA. (*Id.*) The letter also indicated that Plaintiff was required to submit the forms by December 27, 2016, or would "face appropriate action, because . . . Plaintiff was absent without authorized leave." (*Id.*)

On December 19, 2016, Plaintiff's doctor emailed Pearson a letter "to back up the FMLA explanation." (*Id*. at 17–18.) On January 9, 2017, Plaintiff received a letter from Pearson stating that Plaintiff failed to provide sufficient documentation and that "appropriate action would be taken against him." (*Id.* at 19.) "The letter also demand[ed] [that Plaintiff] return [to work] by January 30, 2017." (*Id*.)

On January 19, 2017, "CUNY removed [Plaintiff] from payroll and discontinued his health insurance." (*Id*.) Plaintiff "had to pay out of pocket $75" to obtain another letter from his doctor. (*Id*.) Pearson sent Plaintiff a "final letter" on or about February 3, 2017, which Plaintiff never received. (*Id*.) Plaintiff alleges that the February 3, 2017 letter was "added after the fact given the lag time from previous responses from [Pearson]." (*Id*. at 20.) Plaintiff then called his union representative, Ajaye, who informed Plaintiff that there was nothing the Union could do. (*Id*. at 21.) Plaintiff asked if arbitration was possible, but Ajaye "claimed there was nothing to arbitrate." (*Id*.)

        ii.    **Other alleged unlawful conduct**

Plaintiff alleges additional unlawful incidents during his employment with CUNY. Plaintiff alleges that CUNY unlawfully withheld his paycheck in April of 2014 when he suffered

"a brief illness" that lasted seven days. (*Id.*) Pearson asked Plaintiff to complete FMLA forms, which Plaintiff initially refused to do. (*Id.*) Plaintiff then filled out the forms, but Pearson told him he would have to wait two weeks to receive his paycheck. (*Id.*) Plaintiff "became distraught and very upset" and requested that CUNY distribute his paycheck immediately. (*Id.*) Plaintiff contends that Ajaye only "stepped in briefly," and seemed "bothered." (*Id.*) Pearson sent Plaintiff a letter dated April 28, 2014, "accusing [Plaintiff] of acting irate and demand[ing] [Plaintiff] sign a letter promising never [to] act in this manner again, otherwise he would face possible disciplinary charges." (*Id.*)

On or about August 8, 2015, Plaintiff's computer was replaced because of a virus. (*Id.* at 23.) Plaintiff alleges that, after his computer was initially replaced, IT staff replaced his PC and "[h]ard [d]rive" several times. (*Id.* at 23–24.) On or about November 28, 2015, Plaintiff's "old machine" was placed back at his desk and Lin Abreu, an IT supervisor, "mysteriously replaced one re-imaged hard drive with another within the same day." (*Id.*) Subsequently, a malware virus infected Plaintiff's computer, which "corrupted the entire shared drive within . . . Plaintiff's Department." (*Id.* at 24.) Plaintiff contends that IT employees, including Jeff Rickman, an IT supervisor, accused him of spreading the malware virus. (*Id.* at 24–25.)

After this accusation, Pearson asked Plaintiff to sign a letter stating that Plaintiff "was surfing the internet on a website not approved by CUNY." (*Id.* at 25.) Plaintiff refused to sign the letter. (*Id.*) Plaintiff contacted Ajaye who told Plaintiff to sign the letter "and everything would go away and be forgiven." (*Id.*) Plaintiff subsequently contacted an attorney who wrote several letters to CUNY on Plaintiff's behalf. (*Id.* at 26.) CUNY responded and maintained that Plaintiff was required to sign the letter and if he continued to refuse, the letter would be added to his file with a note of refusal. (*Id.*) Plaintiff signed the letter "under coercion and fear of losing

his job." (*Id.* at 26–27.)

### iii. Plaintiff's request for his personnel file

Plaintiff requested his complete personnel file, but CUNY only gave him "[two] hiring letters from 2008 and 2010, documents pertaining to his pay increase, and . . . address changes and other non-essential information." (*Id.* at 27.) Plaintiff subsequently learned that CUNY requested medical records from his doctor without Plaintiff's authorization. (*Id.*)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally"). Nevertheless, the court is required to dismiss *sua sponte* an *in forma pauperis* action if the court determines that it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

In addition, if the court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (noting that a district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

### b. Claim against Ajaye

Construing Plaintiff's allegations liberally, Plaintiff alleges that Ajaye, as his union representative, breached his duty of fair representation. (Compl. 20–21 (alleging that "Plaintiff was left without any help from his Union").) However, it is well-settled that no individual liability exists for a breach of a union's duty of fair representation. *See Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999) ("We now join the other circuits that have considered the issue and hold that [the Labor Management Relations Act,] 29 U.S.C. § 185(b)[,] and the caselaw provide a shield of immunity for individual union members in suits for breach of the duty of fair representation."); *see also Clemmons v. Hodes*, No. 15-CV-8975, 2017 WL 4326111, at *14 (S.D.N.Y. Sept. 26, 2017) (dismissing claims against individual union defendants because there is no individual liability for union members for breach of the duty of fair representation).

Accordingly, the Court dismisses Plaintiff's duty of fair representation claim against Ajaye.

### c. Eleventh Amendment sovereign immunity bars Plaintiff's monetary damages claims against CUNY and the individual CUNY Defendants in their official capacity

While Plaintiff's Complaint is not clear as to the claims raised against each Defendant, the Complaint names CUNY as a Defendant and Plaintiff seeks monetary damages. In addition,

it is not clear whether Plaintiff is suing the individual CUNY Defendants in their personal or official capacities, and whether any of the individual Defendants have the ability to reinstate Plaintiff's employment.

The Eleventh Amendment bars suits in federal court against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States cannot be sued by private individuals in federal court." (citation omitted)); *Browdy v. Karp*, 131 F. App'x 751, 752–53 (2d Cir. 2005) ("To the extent [the plaintiff] sues defendants in their official capacity as employees of [a state agency] his . . . claims for money damages are barred by the Eleventh Amendment." (internal quotation marks omitted) (first citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); and then citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984))). It is well-established that "suits against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment." *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 83 (2d Cir. 2004); *see also Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("'[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.'" (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006))). However, "[s]overeign immunity does not bar claims for prospective injunctive relief 'against individual officers in their official capacity.'" *McNieve v. Connecticut*, 692 F. App'x 655, 656 (2d Cir. 2017) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

The Supreme Court has held that Congress did not intend to abrogate the states' sovereign immunity under Title I of the ADA; thus, the Eleventh Amendment bars private

individuals from bringing claims against states or state agencies under Title I. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 368–74 (2001); *see also Dollinger v. N.Y.S. Ins. Fund*, 726 F. App'x 828, 831 (2d Cir. 2018) (affirming the district court's dismissal of the plaintiff's ADA discrimination and retaliation claims against a state employer as barred by the Eleventh Amendment); *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (stating that "Congress has not abrogated the states' sovereign immunity from suit under Title I of the ADA").[3]

Accordingly, Plaintiff's ADA claims for monetary damages against CUNY and the individual CUNY Defendants are barred by the Eleventh Amendment.

Similarly, to the extent Plaintiff's FMLA claim is for money damages against CUNY and the individual CUNY Defendants in their official capacity, it too is barred by sovereign immunity. The Second Circuit has held that "Congress did not have the authority to abrogate the sovereign immunity of the states on claims arising under the provisions at issue here, . . . medical leave to deal with one's own 'serious health condition,' 29 U.S.C. § 2612(a)(1)(D), and the related retaliation section, *see id*. § 2614(a)(1), at least when used in conjunction with Section 2612(a)(1)(D)." *Hale v. Mann*, 219 F.3d 61, 69 (2d Cir. 2000); *see also Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 418 (E.D.N.Y. 2010) (dismissing FMLA claims against CUNY and individual defendants in their official capacities because the plaintiff alleged that "she took medical leave to deal with her own health, and thus she cannot pierce sovereign immunity").

Courts in this Circuit have also dismissed ERISA claims against CUNY as barred by the Eleventh Amendment. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 243–44 (E.D.N.Y. 2015)

---

[3] Title I of the ADA covers employment discrimination claims. *See Mary Jo C. v. N.Y.S. and Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013) (noting that the ADA is separated into five Titles and concluding that "the [ADA] unambiguously limits employment discrimination claims to Title I").

(dismissing plaintiff's ERISA claims against CUNY); *Gengo v. City Univ. of N.Y.*, 07-CV-681, 2010 WL 6372012, at *14 (E.D.N.Y. Dec. 2, 2010) ("Plaintiff's ERISA claim is barred by the Eleventh Amendment."), *report and recommendation adopted*, 2011 WL 1204716 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 479 F. App'x 382, 383 (2d Cir. 2012). There is no indication that Congress intended to abrogate the states' sovereign immunity by enacting COBRA or that New York has waived its immunity under COBRA.

A plaintiff may, however, proceed with claims against individual officials employed by the state when those officials are sued in their official capacities and plaintiff seeks prospective, injunctive relief "to prevent a continuing violation of federal law." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287–88 (2d Cir. 2003) (finding that a plaintiff can sue a state official under the ADA for prospective injunctive relief because the Eleventh Amendment "does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law"); *see D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 352 (S.D.N.Y. 2017) ("[T]o the extent that claims are brought here against a defendant in an official capacity, state officers may be properly sued in that capacity for prospective relief under the doctrine of *Ex parte Young*."); *Ali v. Hogan*, 12-CV-104, 2013 WL 5503321, at *9 (N.D.N.Y. Sept. 12, 2013) ("[U]nder the doctrine of *Ex Parte Young* . . . a suit may proceed against a state official in his or her official capacity — notwithstanding the Eleventh Amendment — when a plaintiff '(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.'" (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007))); *see also In re Deposit Ins. Agency*, 482 F.3d at 618 ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal

11

law' and (b) 'seeks relief properly characterized as prospective.'" (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))).

Plaintiff names Pearson, Sanchez, Rickman, and Abreu as individual officials employed by CUNY. (Compl.) Plaintiff identifies Pearson and Sanchez as employees in CUNY's HR department and Rickman and Abreu as employees of CUNY's IT Department. (Compl.) Plaintiff seeks, *inter alia*, reinstatement of his employment and "actual damages for loss of wages." (*Id*. at 20.) Plaintiff, however, does not allege whether these individual state officials have the capacity to reinstate his employment. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 245 (E.D.N.Y. 2015) (finding that the plaintiff's claims against individual state officers in their official capacities did not fall under the *Ex parte Young* exception because plaintiffs did not "allege[] that the [i]ndividual CUNY [d]efendants have the responsibility or capacity to provide him with the prospective relief he seeks, *i.e.* reinstate him"); *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (finding that the *Ex parte Young* "exception to sovereign immunity only authorizes suits against officials with the authority to provide the requested relief").

In light of the special solitude afforded to *pro se* litigants, the Court will allow Plaintiff to amend his Complaint to reassert his ADA, FMLA, and COBRA claims for prospective injunctive relief against state officials who have the capacity to reinstate his employment. *See State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 98 (2d Cir. 2007) (permitting the plaintiff's ADA injunctive claims where the plaintiff's claims did "not seek compensation for past wrongs" or "require the state to pay lost wages, backpay, or retrospective benefits").

Accordingly, to the extent Plaintiff seeks monetary damages against CUNY and the individual CUNY Defendants in their official capacities, Plaintiff's ADA, FMLA, and COBRA

claims are dismissed because they are barred by the Eleventh Amendment. In addition, because *Ex parte Young* requires that "a plaintiff seeking prospective relief from the state . . . name as defendant a state official rather than the state or a state agency directly," *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991); *see also Wang v. Office of Professional Medical Conduct, N.Y.*, 354 F. App'x 459, 461 (2d Cir. 2009) (same), Plaintiff cannot amend his Complaint to assert ADA, FMLA, or COBRA claims against CUNY. Plaintiff may amend his Complaint should he wish to name any individual officers in their official capacities and may seek only prospective injunctive relief.

### d. Plaintiff cannot bring claims against the individual Defendants in their personal capacity under Title VII and the ADA

Plaintiff cannot sue Pearson, Sanchez, Rickman, and Abreu in their personal capacity under Title VII or the ADA because, as individuals, they are not subject to individual liability under either statute. *See Cayemittes v. City of N.Y. Dep''t of Hous. Pres. & Dev.*, 641 F. App'x 60, 61–62 (2d Cir. 2016) ("Title VII does not provide for individual liability." (first citing *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014); and then citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam))); *see also Spiegel*, 604 F.3d at 79 (holding that the retaliation provision of the ADA does not provide for individual liability);[4]

---

[4] Although the Second Circuit has held that there is no individual liability under the ADA's retaliation provision, *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam), it has not reached the question with respect to individual liability under the ADA's other provisions. However, many district courts, including this district court, have determined that the ADA's other provisions likewise do not provide for individual liability. *See Davis v. N.Y.C. Dep't of Corr.*, 17-CV-3863, 2017 WL 5634123, at *3 (E.D.N.Y. Nov. 22, 2017); *see also Murray v. Tanea*, 357 F. Supp. 3d 226, 230 (W.D.N.Y. 2019) ("Many cases . . . have held that individuals cannot be held personally liable for damages under the ADA, regardless of which title of the ADA is at issue."); *Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (collecting cases); *see also Gomez v. N.Y.C. Police Dep't*, No. 15-CV-4036, 2016 WL 3212108, at *7 (S.D.N.Y. June 7, 2016) ("[T]here is no individual liability under the ADA." (citing *Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 162 (E.D.N.Y. 1996)));

*Caesar v. Riverbay Corp.*, No. 15-CV-8911, 2017 WL 6887597, at *4 n.7 (S.D.N.Y. Dec. 27, 2017) (holding that Title VII, the ADEA, and the ADA do not provide for individual liability); *Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (stating that there is no individual liability under the ADA (collecting cases)).  The Court therefore dismisses Plaintiff's Title VII and ADA claims against the individual CUNY Defendants in their personal capacity for failure to state a claim.

      **e.  Plaintiff fails to state Title VII discrimination or retaliation claims against CUNY**

Plaintiff's Title VII claims are not barred by the Eleventh Amendment.  *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Hongmian Gong v. City Univ. of New York*, No. 18-CV-3027, 2019 WL 952340, at *3 n.3. (S.D.N.Y. Feb. 27, 2019) ("The claims against CUNY may proceed as Congress has abrogated state sovereign immunity for Title VII claims.").  However, Plaintiff fails to allege any facts to show that he was discriminated or retaliated against because of his race, color, national origin, sex, or religion.

Title VII discrimination claims are analyzed under the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Tillery v. New York State Office of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 25 (2d Cir. 2018); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016).  Under the framework, a plaintiff must establish a *prima facie* case of discrimination.  *Tillery*, 739 F. App'x at 25.  If the plaintiff meets this "minimal" burden, *Holcomb v. Iona College*, 521 F.3d 130, 139 (2d Cir. 2008), a "temporary presumption" of

---

*Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589, 2016 WL 3093994, at *6 (S.D.N.Y. June 1, 2016) (noting that "[i]t is well established that there is no individual liability under the ADA" (alteration in original) (quoting *Nelson v. City of New York*, No. 11-CV-2732, 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013))).

discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 307, 311 (2d Cir. 2015)). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was pretext or otherwise "more likely than not based in whole or in part on discrimination." *Tillery*, 739 F. App'x at 25 (citing *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009))).

At the pleading stage, however, a plaintiff need not prove discrimination or even allege facts establishing every element of a *McDonnell Douglas prima facie* case. *Littlejohn*, 795 F.3d at 311; *see Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (discussing *McDonnell Douglas* burden at the pleading stage in the context of Title VII cases); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))). Instead, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312); *see also Javed v. Medgar Evers Coll. of City Univ. of N.Y.*, 724 F. App'x 73, 74 (2d Cir. 2018) (citation omitted). The allegations must "put forward 'at least minimal support for the proposition'" that the adverse employment action was "motivated by [the employer's] discriminatory intent." *Javed*, 724 F. App'x at 74 (quoting *Vega*, 801 F.3d at 85); *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the

employment decision.").

Title VII retaliation claims are also "evaluate[d] . . . using the three-step framework outlined in *McDonnell Douglas*." *Russell v. N.Y. Univ.*, 739 F. App'x 28, 32 (2d Cir. 2018) (citing *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)). Under the framework, the plaintiff must first establish "a *prima facie* case of retaliation." *Id.* (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). If the plaintiff sustains this initial "*de miminis*" burden, *Duplan*, 888 F.3d at 626, a "presumption of retaliation" arises and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action," *Saji*, 724 F. App'x at 14 (quoting *Hicks*, 593 F.3d at 164). "If the defendant does so, then the burden shifts back to the plaintiff . . . [to] show that the reason offered by the employer is merely pretext, and that the employer's 'desire to retaliate' was the actual 'but-for cause of the challenged employment action.'" *Id.* (quoting *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90–91).

As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings stage, the allegations need only give "plausible support to the reduced prima facie requirements . . . ." *Id.* "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated — or took an adverse employment action — against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

Plaintiff does not allege his race, national origin, color, or religion. Thus, even liberally construing Plaintiff's allegations, there are no facts that could plausibly connect any adverse

16

employment action to a protected status based on his race, gender, color, national origin or religion. *See Littlejohn*, 795 F.3d at 311 ("The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation."); *see also Vega*, 801 F.3d at 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." (citing *Littlejohn*, 795 F.3d at 310)). The Court therefore dismisses Plaintiff's Title VII discrimination and retaliation claims but grants Plaintiff leave to amend these claims.

### f. Plaintiff fails to state a claim under FOIA or FOIL

Plaintiff contends that CUNY failed to provide him with his "complete personnel record" which was "unacceptable and unlawful according to [FOIA]." (Compl. 27.)

#### i. FOIA claim

FOIA provides for a judicially enforceable public right of access to information collected by federal agencies, subject to specified limitations, and does not apply to state or municipal agencies. *See Geer v. Pheffer*, No. 14-CV-2829, 2015 WL 332996, at *2 (E.D.N.Y. Jan. 23, 2015) ("FOIA only authorizes suits against federal agencies and does not apply to individual officers or state agencies." (quoting 5 U.S.C. §§ 551(1) 552(a)(4)(B), (f))); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999) ("[I]t is beyond question that FOIA applies only to federal and not to state agencies."); *Gianello v. Port Auth. of N.Y. & N.J.*, No. 11-CV-3829, 2011 WL 2436674, at *1 (S.D.N.Y. June 16, 2011) ("The Freedom of Information Act . . . applies to the federal government only and not to municipal or state agencies.").

Plaintiff does not allege that any federal agency improperly withheld the evidence he seeks. Plaintiff's FOIA claim against CUNY cannot proceed because CUNY is not a federal agency. The Court therefore has no authority to grant Plaintiff the relief he seeks under FOIA.

### ii. FOIL claim

In his Complaint, Plaintiff once refers to denial of his rights under FOIL. (Compl. 5.) FOIL is a New York State law that allows individuals to request records collected by New York State entities. N.Y. Pub. Off. Law § 89(3)(a). Under FOIL, "[a] person denied access to requested documents may appeal the denial to the 'head, chief executive or governing body' of the entity or agency in possession of the documents." *Blount v. Brown*, No. 10-CV-01548, 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010) (quoting N.Y. Pub. Off. Law. § 89(4)(a)). Federal courts, however, do "not have jurisdiction to enforce state laws granting public access to official state records." *Ison v. N.Y.C. Police Dep't*, No. 17-CV-3925, 2017 WL 3251586, at *2 (E.D.N.Y. July 27, 2017); *Schuloff v. Fields*, 950 F. Supp. 66, 67 (E.D.N.Y. 1997) (dismissing the plaintiff's FOIL claim because federal courts do "not have jurisdiction to decide whether [a state agency] violated a state law granting the public access to official records"). Challenges to the denial of a FOIL request may be commenced in New York State Supreme Court pursuant to Article 78 of the New York Civil Practice Law and Rules. N.Y. Pub. Off. Law § 89(4)(b); *see Blount*, 2010 WL 1945858, at *2 (describing an individual's remedy under New York State law "for the improper denial of a FOIL request").

Accordingly, the Court dismisses without prejudice Plaintiff's FOIL claim for lack of jurisdiction. *See Posr v. City of New York*, 10-CV-2551, 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013) (finding that the court was "without jurisdiction to consider [p]laintiff's FOIL-related claims" because the proper remedy for a state agency's failure to comply through FOIL

would be through "administrative appeal" or to "seek remedies in state court"), *aff'd sub nom.*, *Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014).[5]

### g. Leave to amend

The Court grants Plaintiff leave to file an amended complaint as to his ADA, FMLA, and COBRA claims for prospective injunctive relief against state officials who have the capacity to reinstate his employment within thirty (30) days of this Memorandum and Order. Plaintiff may also replead his Title VII claims against CUNY for discrimination and retaliation. If Plaintiff elects to file an amended complaint, he must plead sufficient facts to address the deficiencies outlined above. The amended complaint must be captioned "Amended Complaint," and bear the same docket number as this Memorandum and Order. In addition, an amended complaint completely replaces the prior complaint. If Plaintiff fails to file an amended complaint that complies with this Memorandum and Order within thirty (30) days, the claims will be dismissed.

## III. Conclusion

For the foregoing reasons, the Court dismisses Plaintiff's Title VII, FMLA, ADA, and COBRA claims against individual CUNY Defendants Pearson, Sanchez, Rickman, and Abreu in their official capacities for monetary damages without leave to replead. Plaintiff may file an amended complaint as to the individual CUNY Defendants in their official capacity only if the claim is for injunctive relief and Plaintiff alleges that the individual CUNY Defendants have the capacity to grant the relief sought. As to Ajaye, the Court dismisses Plaintiff's duty of fair

---

[5] Plaintiff also alleges a violation of his right to due process under the Fourteenth Amendment. (Compl. 11.) Even if the Court construes Plaintiff's FOIL claim as a violation of due process under the Fourteenth Amendment, the claim fails. *See Blount v. Brown,* No. 10-CV-01548, 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010) (finding that defendant's alleged failure to provide documents requested under FOIL failed to state a due process claim under 42 U.S.C. § 1983).

representation claim without leave to replead. As to CUNY, the Court dismisses Plaintiff's FMLA, ADA, and COBRA claims without leave to replead. The Court also dismisses Plaintiff's Title VII claim, but grants Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and Order as to CUNY. The Court also dismisses Plaintiff's FOIL and FOIA claims without leave to replead.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: August 15, 2019
      Brooklyn, New York

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge